Good morning. May it please the court. My name is Shelly Song and I am joined by Madhu Pocha and we are pro bono counsel for Eulalio Pablo-Mendoza. There are two main issues in our case, whether our client is eligible for asylum, which I will address, and whether our client is eligible for relief under the Convention Against Torture, which my co-counsel will address. It is undisputed that our client was a witness to the political killing of his cousin, and the police have targeted him for death on a number of occasions. It is also undisputed that the Guatemalan government fails to protect him because he is mine, and the police are the ones who are persecuting him. How do we know that the Guatemalan government will fail to protect him? There are a number of instances that he testified to, credibly, in front of the immigration judge. Well, there are instances in which he testified that the police were coming after him, but he has never reported anything to anybody else. He has never complained to anybody higher up. He has never been to the Guatemalan government. So anybody other than the police that might constitute the government has never had the opportunity to protect him. So how do we conclude that the Guatemalan government will fail to protect him? Well, in Guatemala, Mayans generally are persecuted, and that is undisputed. They lack any form of political power, and he has a history of experiencing persecution by the government.  Well, he has experienced, he has been required to work for the government for free, and he has testified to... He testified in that case that he and all of the people in his village were forced to work on a road in order to be able to use the road. Now, I didn't see anything in there that said that it was only Mayans who were forced to do so, although his town was principally Mayans, but it didn't appear to be exclusively Mayans. That is true that his town is principally Mayans, and that town... Anyway, that happens in many cultures in many countries, that people have to work on the road. That's one of the things they have to do as a duty, like we force people to do service. And if your village is going to have a road, you've got to get out there and you've got to be putting... breaking rocks and putting pebbles and doing it. I don't see how that makes out your claim for... Well, Mayans in Todos Santos, where our client is from, which is principally a Mayan town, individuals in that town have been subject to persecution by... or have been subject to discrimination, generally, especially going all the way back to the Civil War in Guatemala, where they were targeted and forced to become soldiers for the... This case, I think you said, in fact, has to do with... He is with another gentleman, who happened to be cousins, who was shot. And the officers who do it threaten him that if he talks or his other cousin talks, they're going to come after them, too. That's the case we're dealing with, right? We're not talking about breaking up rocks for roads, etc. True? Well, that's... So these rogue cops, that's what they do. That's where we're at. Well, we're not arguing, or we disagree that these police officers are rogue. Our client never testified that they were rogue. And he has experienced death threats by the police officers because he... Yes, he was a witness to the political killing of his cousin. But being threatened because you're a witness to a crime is very different from being threatened because you're a Mayan. So where's the evidence that he's being threatened because he's a Mayan? And how do you get around the fact that everything that he's been persecuted for appears to be because he was the witness to a crime? Well, we're not arguing that he's being threatened because he is Mayan. One of the grounds on which he is eligible for asylum is that he lacks protection from the government because he is Mayan. And he can't go to the police because the police are the ones who are persecuting him. And while he hasn't gone to the government to seek any protection, he knows that that is not an avenue that is available for him for safety. But that still has to be tied to his ethnicity in some way, right? Yes, and this court has held that when a government does not protect a group of people because of their ethnicity or race, that does constitute... Does that mean then that all Mayans in Guatemala are eligible for asylum in the United States? Well, it would depend on the circumstances of that case. And in the facts of our case, while all Mayans are discriminated against in Guatemala, he is also at a heightened risk of persecution because he did get threatened by the police on a number of occasions and was targeted by the police. But discrimination does not equate to persecution. No, but general discrimination of a group of people does give rise to a lesser evidentiary burden if you have a heightened risk of persecution, or a lesser evidentiary burden for showing individualized risk if you are part of that discriminated group. And in this case, our client is at a heightened risk separate from all other Mayans because he has been targeted for death. Is that a general principle that we have established about Mayans, or are we able to establish that on this record? That Mayans are discriminated against in Guatemala? Yeah, is that a general position by the State Department? Or is it something established in our cases, or is it something we're supposed to find on this record? No, in the country conditions evidence that is available in this record, it is established that Mayans are discriminated against and do lack political power in Guatemala. Did you want to save some time for your counsel? Yes. All right. I would like to. Thank you. Good morning. Just to be clear, we are seeking asylum on three independent grounds. Could you state your name for the record? Sorry, Madhu Pocha, Pro Bono Council. I'd like to save a minute, if I can, for rebuttal. Just to be clear, as I start, we're seeking asylum and the full benefits of asylum on three independent grounds. But apart from that, we are also seeking relief under the Convention Against Torture. On the asylum, let's just make sure I've got the three grounds. So what are the three grounds? The three independent grounds are persecution on account of race because the Guatemalan state will not protect Pablo Mendoza from police persecution. Two, imputed political opinion. And three, a particular social group comprised of family members who are racist. And where is the evidence for the imputed political opinion? The evidence is Pablo Mendoza testified that his cousin Jorge, the first person who was murdered, had anti-government views, had actually fled Guatemala, come back, immediately had come back, was targeted by the police and killed, and he was in association. And where is the evidence that the police thought that he was of the same political persuasion? There's no direct evidence, Your Honor, but he presented circumstantial evidence of the political nature of the killing and that he was present at the killing and in association with the target of a political murder. But even if this court doesn't – There's no evidence that the police said anything to him political. There's no evidence that they ever claimed it was political. There's no evidence they said a word to him. There's no direct evidence whatsoever. Is there of that? There's no direct evidence, but that is – Just that he saw – just that he saw his cousin killed, correct? Yes. There's no direct evidence. The evidence in the record is Pablo Mendoza's credible testimony, but that is only one of the grounds for relief, and so we are also seeking other grounds. And just so I can get to the Convention Against Torture, for asylum, we've been discussing why did these terrible things happen. Everyone agrees, and the government agrees, that my client was persecuted. But for the Convention Against Torture, the why does not matter. The only thing that matters is whether he's likely to be tortured if we send him back to Guatemala. On this record, the answer is yes. The BIA made several legal errors. First, the BIA used the wrong definition of torture. The torture regulations condemn a broad range of conduct that encompass a myriad of ways in which people inflict cruelty and torture on other human beings. Torture is not just death. It is not just physical harm. It is also the harm that comes from threats of death. That's in the regulation. So your view would be that any time somebody gets a threat of death, he's being tortured. Is that correct? It depends on – If I threaten you with death, it's torture. Now, you might not be connected to the government, but if I threaten you with death, it's torture. Correct? No, Your Honor. If it comes from – first, it has to come from a government actor, like the police in this case. A policeman threatens me with death, says, I'm going to shoot you. That makes it torture. Is that correct? It could be, Your Honor, if there's credible evidence in the record of why that person had a belief that the threat was actually credible and actually feared for one's life because of those threats. Here, we have multiple threats. You're saying that a threat of death, credible, is per se torture. It sounds like what you're saying. It has to be connected under the regulations, Your Honor, to mental harm and suffering. So it could be, yes, if there's credible evidence. True. And we can all infer that anybody who's threatened with death has mental suffering from it. True. You know, Your Honor, it depends on whether or not that the Petitioner has been deemed credible, which is the case we have here. That actually leads to the second legal error, which is that the BIA should apply to presumption in Pablo Mendoza's favor. If the BIA had applied a presumption, the burden would have shifted to the government to rebut that and show that he's not likely to be tortured in his individual situation if he's returned to Guatemala. What we have here is that Pablo Mendoza won't be protected because of his race by the state. And because he won't be protected, he has nowhere to go, no place for protection in Guatemala. And I'm going to save the remaining time for rebuttal. All right. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Nicole Murley, and I'm here today on behalf of the Attorney General. First, this Court should dismiss this petition for review insofar as it lacks jurisdiction over the claims that Petitioner raises for the first time in his opening brief before this Court. Second, the Court should deny the petition for review from the agency's decision denying Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture because substantial evidence supports the decision that Petitioner failed to establish a nexus to a protected ground and failed to demonstrate that it is more likely than not he will be tortured upon his return to Guatemala. And the record evidence in this case does not compel a contrary conclusion. First, for the first time in his opening brief, Petitioner claims three separate issues that he failed to raise before the agency. First, he claims he's a member of a particular social group consisting of witnesses to the extrajudicial killing of a shared relative. Two, that he suffered past and fierce future persecution on an account of an imputed political opinion. And three, that he was tortured in the past, and this entitles him to a presumption of future torture. And a note on the third issue, the government could not find any support for Petitioner's position that there is a presumption in the regulation from past torture. There is case law from this Court that says it goes to the overall analysis, but there is no presumption, burden-shifting presumption. So the Court lacks jurisdiction over these claims because he failed to raise them to the Board in the first instance. Let's turn to the question of political opinion. The Board did mention political opinion in its opinion. The Board did, and if you turn to the Board's decision, the Board is actually referencing its agreement with the immigration judge's decision. And it says, we agree with the immigration judge, and then it goes on to say the respondent has not shown at least one central reason for the threats and fears. And then threats were on account of a political opinion or because of his membership in a particular social group. The Board offers no analysis. When it does offer its analysis, its conclusions and findings, it talks solely about the ground that Petitioner raises, which is his being Mayan. If the Board, in the previous sentence, cites to the immigration judge's decision at pages 5 to 6, this is a little page turning, but if you actually turn to the immigration judge's decision, it's pages 91 and 92 of the administrative record. The immigration judge is giving an oral decision. He starts by talking about what Petitioner claims, which is that he's Mayan and indigenous, and the court found that there was sufficient evidence that he shows he's Mayan, he's an indigenous person in Guatemala, and that he's a member of a particular social group. He then goes on to discuss it. If you flip the page to 92, in the last full paragraph, he's, I think, giving just his dicta and speaking generally and says this is not a political opinion or any ground. I don't ---- Since the Board has raised the question of political opinion, isn't it then fair game for Mendoza to, Pablo Mendoza, to raise this? Petitioner did not raise that claim before, in his asylum application, before the immigration judge or before the Board. But does that matter if the Board, sua sponte, discusses it? Then why isn't it appropriate for the Petitioner to follow up on the discussion by the Board? Petitioner raises that instance or that argument for the first time in his opening brief. So the agency has not had a chance to offer an analysis on it. The Board mentions it in the ---- Does that suggest, then, that we have an obligation to remand to the Board to address it? If the court were to find that the Board or the agency should address that, that there was evidence of political opinion in this case, then that would be the appropriate evidence. Well, there was a mention of political opinion, but it seems to me what's being argued on appeal is imputed political opinion. Was there any taking up by the Board or anything else that imputed, which is a different animal from political opinion itself, it seems to me. There was not. And the record evidence in this case does not demonstrate or does not show that Petitioner, that the police imputed or thought that there was any political opinion for the basis of the harm against Petitioner. So your argument should have been that imputed political opinion is being raised for the first time. Yes, Your Honor. So to ---- with regard to those three issues Petitioner raises, those issues are not properly before the court. I'd like to turn now to the second issue, and Petitioner has failed to show that there's not a nexus between past persecution or a well-founded fear of persecution and his being Mayan. Petitioner testified that the police officer sought his cousin, Mario, because of a prior disagreement. He testified that the police officers did not want him to say something about what he witnessed. And as the Board determined, those threats were not on account of Petitioner's being Mayan. There's no record evidence that demonstrates that the police threatened Petitioner for any other reason than he witnessed the killing of his cousin. And under the real ID, it's Petitioner's burden to demonstrate that the protected ground was or will be at least one central reason for the persecution. And a motive is a central reason if the persecutor would not have harmed Petitioner if such motive did not exist. Thus, the record does not compel the conclusion that the police threatened or harmed Petitioner because he's Mayan or that it was a reason sent that was essential to their decision to act. Do you agree with opposing counsel's representation that death threats constitute torture? On the record in this case, there is not evidence that the threats that Petitioner received amount to torture. What is about the record in this case that leads you to conclude that the death threats in this case did not amount to torture? The agency found that they did not amount to torture. They were two instances which do not give rise to, based on the record before the board, the agency found it did not give rise to the level required by regulation and statute. What is the level required to constitute torture? You're not going to get away that easily. I believe it's a fact-by-fact and case-by-case determination. Doesn't the regulation say that it has to be imminent? Isn't it a threat of imminent death? Yes. And in this case, the threat was if he told the police, if he went ahead and he told on what they did. The evidence here, it's also he hasn't demonstrated that it's more likely than not that if he returns to Guatemala, he will be tortured. The board found that the events occurred more than six years prior to their decision, and Petitioner testified that his father has returned to Guatemala, his mother has lived in Guatemala, and his child lives in Guatemala, and there's no record evidence that since his departure there has been any threats made towards the family. But would there be if they weren't the ones who witnessed the murder, why would there be threats toward them? If the police were actively searching for Petitioner, if there was evidence that this was still an issue, that was more than speculation on Petitioner's part. But here, it's Petitioner's burden to demonstrate that this is still a risk, that this would be something that he would face if he returned to Guatemala, and this record is devoid of any evidence beyond speculation that it is more likely than not that this is a harm that he would suffer upon return. And in sum, the Court should dismiss the petition for review to the extent that Petitioner failed to raise those claims and deny the petition for review where substantial evidence supports the Board's conclusion that Petitioner failed to show the police targeted him on account of a protected ground, and the record does not compel the conclusion that it is more likely than not he'll be tortured if removed to Guatemala. Thank you. Thank you. Rebuttal? I'd just like to briefly address, Judge Bybee, your question about remand. I want to make it clear that the government actually has not briefed on the merits of any of the issues in this case. Counsel said that they oppose the presumption of the applicability or presumption of future torture. The government actually did not brief the issue on the merits, and that goes also for political opinion and social group. If there's any doubt about what should happen in this case with those issues, the Court should remand to the BIA for further proceedings. And that also goes to the issue of our argument for asylum on account of race. The government, again, misstated our position, which we tried to articulate in the briefs and again today. It's that Pablo Mendoza is not being threatened by death because he is Mayan. The persecution he faces on the basis of race is because the state will not protect him from police persecution on account of the fact that he's Mayan. As a Mayan, he can't get that protection. And also as a Mayan, and that also goes to the fact that he's eligible for relief under the Convention Against Torture because there's no one in Guatemala to protect him. The police won't protect him. If we send my client back to Guatemala, back into the hands of the persecutors who tried to torture him and did torture him before, back to where the police act with impunity and where the state fails to protect Mayans from police persecution, then once again, Pablo Mendoza will be living in fear and running for his life. Counsel, would it be useful to remand issues that were not exhausted? Your Honor, first of all, all the issues here have been exhausted. We put the ‑‑ our client put the BIA on notice through the factual record. As a pro se petitioner, he did not need to do more than present the facts and also and present the issues in both the notice of appeal and the BIA brief. So here in this case, all the issues have been sufficiently exhausted for this court to review. Now, this court could choose in its discretion to remand. We don't think it's appropriate or necessary because the factual record is undisputed and there's no question about what happened to Pablo Mendoza. But it is within the court's discretion, Your Honor. All right. Thank you. Thank you to all counsel. The case is submitted for decision by the court, and we especially express our gratitude to the law student and pro bono counsel for your efforts on behalf of the client. Thank you very much.
judges: Fernandez, Rawlinson, Bybee